IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Larry Tompkins, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 8:09-cv-02369-JMC |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |
| Eckerd d/b/a Rite Aid, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Defendant Eckerd d/b/a Rite Aid's ("Rite Aid") Motion for Summary Judgment [Doc. 63]. Based on the record before this court, Rite Aid's motion is granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The evidence presented, viewed in the light most favorable to Plaintiff, establishes the following. Plaintiff, an African-American, is a pharmacist licensed in the state of South Carolina. Plaintiff worked as a pharmacist for Eckerd Corporation ("Eckerd") from sometime in 1984 until June of 2007. During his employment with Eckerd, Plaintiff worked at several Eckerd stores, both as a pharmacist and pharmacy manager. In October 2003, Plaintiff was transferred to Eckerd store 11649 in Greenwood, South Carolina. Plaintiff became the Pharmacist-in-Charge ("PIC") at store 11649. While employed at store 11649, Plaintiff misfilled several prescriptions. Some of these misfills resulted in Eckerd paying settlements to resolve potential liability.

In June 2007, Rite Aid Corporation[1] acquired Eckerd Corporation. After the acquisition, Plaintiff became an employee of Rite Aid and remained the PIC for store 11649. Plaintiff received training on the proper use of Rite Aid's system for filling prescriptions. In addition, Plaintiff received a copy of Rite Aid's employee handbook, "An Associate Atlas" (the "Atlas"), acknowledging his at-will employment status.

In November 2008, Plaintiff's supervisor, Ik Jumani, demoted Plaintiff from his position as PIC to a Staff Pharmacist as a result of Plaintiff's alleged poor performance noted in the lack of cleanliness of the pharmacy, low key performance indicator scores, and declining sales. April Scott, a white female, replaced Plaintiff as the PIC for store 11649 and became Plaintiff's immediate supervisor. Subsequently, Plaintiff was transferred to store 11648 in Greenwood, South Carolina because of his alleged resistance to Scott's management.

On November 17, 2008, Rite Aid conducted a mandatory inventory of the controlled substances at store 11649. Rite Aid's employees, including April Scott, Ik Jumani, Amanda Holmes, and Jed Bryant were present for the inventory. Rite Aid alleges that the inventory resulted in the discovery of discrepancies in the controlled drug log and medications on the shelf, including a significant shortage of Oxycontin pills. These discrepancies occurred during Plaintiff's tenure as the PIC. Although Plaintiff initially took responsibility for the pill shortage, Plaintiff later asserted that a log sheet had been electronically altered and that he was not responsible for the alleged shortage. Although Ik Jumani, as Pharmacy District Manager, recommended Plaintiff's termination because of the pill shortage, his request was declined. Subsequently, Plaintiff was suspended with pay for

---

[1] Since Plaintiff has only sued Rite Aid and not Eckerd Corporation, his former employer, the court shall focus its legal analysis on Plaintiff's complaints against Rite Aid during his employment there.

2

three days and given a written final warning of termination. Ik Jumani later transferred to another district.

After repeated coaching and counseling, on April 24, 2009, Rite Aid terminated Plaintiff because of his misfilled prescriptions and his overall poor job performance.

Plaintiff filed this lawsuit alleging causes of action against Rite Aid for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981, breach of contract, and wrongful discharge in violation of public policy.

## **LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *See id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

**I. Race Discrimination**

Plaintiff brings race discrimination claims against Rite Aid under Title VII and section 1981. Rite Aid argues that it is entitled to summary judgment with regard to these claims because Plaintiff cannot establish a prima facie case of race discrimination. For purposes of considering allegations of discriminatory treatment or termination, a section 1981 claim is analyzed consistent with those principles which govern consideration of Title VII claims. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 263 n.* (4th Cir. 2008). Where an employee cannot present direct and indirect evidence of discrimination, the employee may proceed under a burden-shifting analysis to make the requisite showing of discrimination. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001). Under the burden shifting analysis, the employee must first prove a prima facie case of discrimination by a preponderance of the evidence. *See McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). If the employee is able to prove a prima facie case, the employer has an opportunity to present a legitimate nondiscriminatory reason for its employment action. *Id.* If the employer does so, the presumption of unlawful discrimination created by the prima facie case drops,

and the burden shifts back to the employee to prove that the employer's nondiscriminatory justification was just a pretext for discrimination. *Id.*

To establish a prima facie case of racial discrimination, the employee must demonstrate four elements. First, an employee must demonstrate that he was a member of a protected class. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). Second, the employee must demonstrate that he suffered from an adverse employment action. *Id.* "A typical adverse employment action includes discharge, demotion, decrease in compensation, loss of job title or supervisory responsibility, reduced opportunities for promotion, or other conduct that had a significant detrimental effect." *Gurganus v. Beneficial N.C., Inc.*, 25 Fed. Appx. 110, 112 (4th Cir. 2001) (citing *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999)). An adverse employment action often has an economic effect; however, that is not a requirement. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "Reassignment with significantly different responsibilities may also amount to tangible employment actions." *Id.* Third, the employee must demonstrate that, at the time the employer took the adverse employment action, he was performing at a level that met the employer's legitimate expectations. *Holland*, 487 F.3d at 214. In satisfying this element, an employee's own testimony is not sufficient to establish a genuine issue as to whether the employee was meeting the employer's expectations. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). Rather, "[i]t is the perception of the [employer] which is relevant, not the self-assessment of the [employee]." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996). With regard to the fourth element, the Fourth Circuit has noted that the critical objective "is that the [employee] demonstrate he was not hired (or fired or not promoted, etc.) 'under circumstances which give rise to an inference of unlawful discrimination.'" *E.E.O.C. v. Sears Roebuck and Co.*, 243 F.3d

846, 851 n.2 (4th Cir. 2001) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). In deciding whether this objective is met, the Fourth Circuit has applied varying standards. *Compare Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011) (noting that the fourth element requires a showing that the employee "was rejected under circumstances giving rise to an inference of unlawful discrimination"), *with Holland*, 487 F.3d at 214 (noting that the fourth element requires a showing that "the position remained open or was filled by similarly qualified applicants outside the protected class"), *and Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) (noting that the fourth element requires a showing that "other employees who are not members of the protected class were retained under apparently similar circumstances").

Rite Aid argues that Plaintiff cannot establish a prima facie case of race discrimination. Rite Aid does not dispute that, as an African-American, Plaintiff qualifies as a member of a protected class. Further, Rite Aid does not dispute that Plaintiff's suspension and subsequent termination qualify as adverse employment actions. However, Rite Aid argues that Plaintiff's demotion does not qualify as an adverse employment action. In support of its argument, Rite Aid contends that Plaintiff's demotion resulted in a pay increase and less demanding job responsibilities. However, an adverse employment action does not always have adverse economic effects. As a result of Plaintiff's demotion, Plaintiff lost the title of "Pharmacist-in-Charge." Furthermore, Plaintiff's job responsibilities changed as a result of the demotion. Specifically, Plaintiff no longer held managerial responsibilities. The court finds that these factors support the finding that Plaintiff's demotion was an adverse employment action. Thus, Plaintiff has satisfied the first two elements of a prima facie case of discrimination.

Rite Aid further argues that Plaintiff cannot establish a prima facie case of discrimination because Plaintiff was not performing at a level that met Rite Aid's reasonable expectations. In support of its argument, Rite Aid cites to several of Plaintiff's admissions within his deposition that his performance had not met Rite Aid's expectations. Specifically, between the period of June 2007, when Rite Aid acquired Eckerd, and April 2009, when Rite Aid terminated Plaintiff's employment, Plaintiff admits that on two occasions, he closed store 11649 early, in violation of Rite Aid's policy. Plaintiff admits that he received poor performance scores while working at store 11649. Further, Plaintiff signed a statement admitting to responsibility for failure to maintain proper records of controlled substances in the pharmacy inventory.[2] In Plaintiff's Memorandum of Law in Response to Defendant's Motion for Summary Judgment [Doc. 66], Plaintiff attempts to provide justification for his performance in these areas; however, Plaintiff's own testimony is not sufficient to create an issue of fact as to whether Plaintiff was performing at a level that met Rite Aid's reasonable expectations. Therefore, the court finds that, based on Plaintiff's own admissions, Plaintiff was not performing at a level that met Rite Aid's reasonable expectations. Thus, Plaintiff has failed to satisfy the third element of a prima facie case of discrimination.

Further, Rite Aid argues that Plaintiff cannot establish a prima facie case of discrimination because Plaintiff has failed to show that Rite Aid's adverse employment actions occurred under circumstances which give rise to an inference of unlawful discrimination. As discussed above, in similar circumstances, the Fourth Circuit has applied various standards in assessing whether this element of the prima facie case of discrimination has been met. Plaintiff asserts that the standard

---

[2] In his deposition, Plaintiff asserts that the log containing the information upon which he based his signed statement had been forged. However, Plaintiff does not present any evidence supporting this assertion.

that applies in this case is whether Plaintiff's position was filled by a similarly qualified applicant outside of the protected class. However, Rite Aid asserts that the standard that applies in this case is whether employees who were not members of the protected class were retained under apparently similar circumstances. The court finds both standards to be applicable in this case.

Plaintiff's claim for race discrimination is based on his suspension, his demotion, and his subsequent termination. Regarding Plaintiff's suspension, the appropriate standard to apply is whether employees who were not members of the protected class were subject to suspension under apparently similar circumstances. To meet this standard, "[Plaintiff] must prove that the comparators upon whom he relies are similarly situated 'in all relevant respects.'" *Woodward v. United Parcel Serv., Inc.*, 306 F. Supp. 2d 567, 575 (D.S.C. 2004) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Plaintiff asserts that Rite Aid's employees Johnny Milling ("Milling") and Debbie Sloan ("Sloan") had more misfillings than Plaintiff, but were not similarly disciplined. Plaintiff alleges that both Milling and Sloan were under the same supervision as Plaintiff. Plaintiff provides a copy of an email [Doc. 66-17] forwarded from Tammy Rogers, Regional Pharmacy Vice President, that suggests that Sloan and Plaintiff had the same number of reported incidents at some time during their employment with Rite Aid. Further, Plaintiff provides a copy of an email from Ik Jumani that suggests that Milling had over twelve misfills in a twelve month period [Doc. 66-9]. However, Rite Aid provides evidence to show that Milling was recommended for termination in July 2009 [Doc. 69-4]. Plaintiff has acknowledged that Rite Aid's concerns with his performance went beyond his rate of misfills. Plaintiff has acknowledged that in addition to his misfills he received low key performance scores and closed store 11649 early on two occasions. Plaintiff has not presented any evidence to show that, other than a high rate of misfills, Milling and Sloan were similarly situated

8

to Plaintiff in all relevant respects. Therefore, with regard to Plaintiff's suspension, Plaintiff has failed to satisfy the fourth element of a prima facie case of discrimination.

Regarding Plaintiff's demotion and termination, the appropriate standard to apply is whether Plaintiff's position was filled by a similarly qualified applicant outside of his protected class. Plaintiff clearly meets this standard with regard to his demotion because it is undisputed that April Scott, a Caucasian female, replaced Plaintiff as the PIC. However, the termination of Plaintiff's employment occurred approximately five months after Plaintiff was demoted and replaced by April Scott. Further, at the time of the termination of his employment, Plaintiff was no longer employed at the same store location as April Scott. Plaintiff has failed to allege that after his termination, his position was filled by a similarly qualified applicant outside of his protected class. Therefore, with regard to Plaintiff's demotion, he has satisfied the fourth element of a prima facie case of discrimination. However, with regard to his termination of employment, Plaintiff has not satisfied the fourth element.

Thus, Plaintiff has not established a prima facie case of discrimination with regard to his suspension, demotion, or the termination of his employment. Therefore, Rite Aid's motion for summary judgment with regard to Plaintiff's race discrimination claims is granted.

## II. Retaliation

Rite Aid argues that it is entitled to summary judgment regarding Plaintiff's retaliation claim. However, in his Memorandum of Law in Response to Defendant's Motion for Summary Judgment [Doc. 66], Plaintiff withdraws his claim for retaliation. Therefore, Rite Aid's motion for summary judgment with regard to Plaintiff's retaliation claim is granted.

**III. Breach of Contract**

Rite Aid argues that it is entitled to summary judgment regarding Plaintiff's breach of contract claim because the provisions of Rite Aid's employee handbook are insufficient to create a binding contract. Generally, an at-will employee may not bring a cause of action for breach of contract upon termination of employment. *Hessenthaler v. Tri-County Sister Help, Inc.*, 365 S.C. 101, 107-08, 616 S.E.2d 694, 697 (2005). However, an employee's at-will status may be altered by the terms of an employee handbook. *Id.* In such cases, the employee may bring a claim for breach of contract upon termination of employment. *Id.* "Mandatory, progressive discipline procedures" within an employee handbook may constitute enforceable promises which alter the status of an at-will employee. *Id.* at 109, 616 S.E.2d at 698. An employer may issue such a handbook without altering the at-will employment status by including a conspicuous disclaimer. *Id.* at 108, 616 S.E.2d at 697. A disclaimer is considered conspicuous if it is "in underlined capital letters on the first page of the document and signed by the employee." S.C. Code Ann. § 41-1-110 (2010). "The issue of whether an employee handbook constitutes a contract should be submitted to the jury when the issue of the contract's existence is questioned and the evidence is either conflicting or is capable of more than one inference." *Hessenthaler*, 365 S.C. at 108, 616 S.E.2d at 697 (citing *Small v. Springs Indus., Inc.*, 292 S.C. 481, 483, 357 S.E.2d 452, 454 (1987)).

While Plaintiff seems to assert that the Atlas [Doc. 66-3] altered the at-will status of Plaintiff's employment, Plaintiff does not cite to any specific language within the Atlas [Doc. 66-3] that would constitute an enforceable promise which would alter the status of his at-will employment. At most, Plaintiff may attempt to rely on the "Standards of Conduct" section within the Atlas [Doc. 66-3] . This section provides: "Violations of our standards will result in appropriate corrective

action, up to and including discharge.  In arriving at a decision for proper action, the following will be considered: [t]he seriousness of the infraction; [t]he associate's past record; [and] [t]he circumstances surrounding the matter." [Doc. 66-3].  However, there is no mandatory language within this discipline policy that could be considered an enforceable promise altering Plaintiff's at-will employment status.  Plaintiff also argues that he did not sign the Atlas [Doc. 66-3], and that it does not contain a valid disclaimer.  However, the absence of a disclaimer and an employee signature in a handbook is not sufficient to alter the status of at-will employment where the handbook does not contain enforceable promises.

Plaintiff also asserts that the "Rite Aid Continuous Quality Improvement Program for Accurate Prescription Processing" (the "QIP") [Doc.66-2] altered the at-will status of Plaintiff's employment.  The QIP sets forth Rite Aid's guidelines for quality control in the prescription filling process.  The QIP contains no disclaimer regarding the alteration of an employee's at-will employment status.  Further, the QIP contains a mandatory discipline procedure for addressing prescription misfills.  The discipline procedure is positioned under a heading that states, "Required Activities."  Specifically, the QIP requires that three incidents result in a verbal warning, six incidents result in a written warning, nine incidents result in a final written warning, and incidents exceeding nine result in a field review process.  The QIP further states that incidents are to be tracked on a twelve month rolling basis.  Such mandatory language, absent a disclaimer, is sufficient to create an issue of fact as to whether a contract altering an employee's at-will status exists.

Further, Plaintiff argues that Rite Aid violated the terms of the QIP.  Specifically, Plaintiff argues that Rite Aid did not provide Plaintiff with the required verbal warning, written warning, and final warning before requesting his termination.  Plaintiff also asserts that Rite Aid did not provide

the required Field Review Procedure before terminating his employment. In support of his argument, Plaintiff provides an email, dated March 26, 2009, from Arnaldo La Luz, Pharmacy District Manager, to Tammy Rogers, Regional Pharmacy Vice President, stating that Plaintiff's previous five misfills had not been discussed with him.

Rite Aid argues that there is no genuine issue of fact concerning whether Rite Aid breached the QIP because the progressive disciplinary procedure set forth in the policy is not the only method by which a pharmacist's employment may be terminated. Rite Aid further argues that Plaintiff's termination was not based solely on his misfills, thus the termination was not subject to the QIP discipline policy. However, the termination of Plaintiff's employment was at least partially based on Plaintiff's alleged misfills. Further, based upon Defendant's Memorandum of Law in Support of its Motion for Summary Judgment [Doc. 63], the discovery of Plaintiff's high number of misfills was the occurrence that ultimately led to the termination of Plaintiff's employment. Furthermore, Rite Aid states in Defendant's Memorandum of Law in Support of its Motion for Summary Judgment [Doc. 63] that Plaintiff had not been properly counseled regarding his misfills. Based on the foregoing, the court finds that Plaintiff has established a genuine issue of material fact as to his breach of contract claim. Therefore, Rite Aid's motion for summary judgment with regard to Plaintiff's breach of contract claim is denied.

## IV. Wrongful Discharge

Rite Aid argues that it is entitled to summary judgment with regard to Plaintiff's wrongful discharge claim. Generally, an employer may terminate an at-will employee for any reason or for no reason at all. *See Culler v. Blue Ridge Elec. Co-op., Inc.*, 309 S.C. 243, 245, 422 S.E.2d 91, 92 (1992). However, when an employer terminates an employee for a reason that violates a clear

mandate of public policy, the terminated employee has a cause of action for wrongful discharge. *Ludwick v. The Minute of Carolina, Inc.*, 287 S.C. 219, 225, 337 S.E.2d 213, 216 (1985). "The determination of what constitutes public policy is a question of law for the courts to decide." *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 638 (S.C. 2011). The public policy exception has been found to apply in two situations: (1) when an employer forces an at-will employee to violate the law in order to remain employed, and (2) when "the reason for the employee's termination was itself a violation of the criminal law." *Lawson v. South Carolina Dep't of Corr.*, 340 S.C. 346, 350, 532 S.E.2d 259, 260-61 (2000). However, the public policy exception is not limited to these two situations. *See Garner v. Morrison Knudsen Corp.*, 318 S.C. 223, 226-27, 456 S.E.2d 907, 909-10 (1995) ("While we have applied the public policy exception to situations where an employer requires an employee to violate a criminal law, and situations where the reason for the employee's termination was itself a violation of the criminal law, we have never held the exception is limited to these situations.").

In support of its argument, Rite Aid cites *Greene v. Quest Diagnostics Clinical Labs., Inc.*, 455 F. Supp. 2d 483 (D.S.C. 2006). In *Green*, the court granted summary judgment on the plaintiff's wrongful discharge claim because the plaintiff did not allege that she was required to violate criminal law in order to remain employed or that her termination was a violation of criminal law. *Id.* at 489-91. However, in *Green*, the court notes that the plaintiff's claim was based on internal reporting of unlawful activity within the defendant corporation rather than external reporting to a government agency. *Id.* at 490 n.4. The *Greene* court notes that "[t]he laws of the state, inherent in establishing the administrative agency and complaint procedures, support and encourage reporting of wrongful behavior to those agencies." *Id.* Here, Plaintiff asserts that he filed a complaint with the Department

13

of Health and Environmental Control ("DHEC") regarding Rite Aid, and that the complaint to DHEC was a cause of his termination. However, Plaintiff does not provide sufficient information to clarify to the court the basis of his alleged report to DHEC. Plaintiff has submitted a copy of an email from Ik Jumani [Doc. 66-9] supporting his assertion that Rite Aid was aware that he had complained to DHEC about issues with store 11649. Plaintiff's Memorandum of Law in Response to Defendant's Motion for Summary Judgment [Doc. 66] suggests that Plaintiff complained to DHEC regarding an inventory of Oxycontin conducted by Rite Aid. However, the excerpts from Plaintiff's deposition [Doc. 66-18] that Plaintiff has presented to the court state that Plaintiff never reported a problem concerning a loss of Oxycontin to DHEC. Plaintiff's Amended Complaint [Doc. 47] alleges that he pointed out to Rite Aid that it had violated the Pharmacy Code of Ethics as well South Carolina law, and suggests that the alleged violations were in relation to a failure to report drugs that had allegedly been deleted from a customer's profile. However, Plaintiff's Amended Complaint [Doc. 47] does not assert that Plaintiff ever reported the alleged violations to DHEC. The information that Plaintiff has provided to the court is insufficient to clarify the basis of Plaintiff's alleged complaint to DHEC. Therefore, the court does not have sufficient information to determine whether the reported information, if true, involved a violation of the law and thus, whether termination of Plaintiff's employment based on Plaintiff's alleged report to DHEC would be a violation of public policy. Accordingly, Rite Aid's motion for summary judgment with regard to Plaintiff's claim for wrongful discharge is granted.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Rite Aid's Motion for Summary Judgment [Doc. 63] is **GRANTED** with respect to Plaintiff's claims under Title VII and 42 U.S.C.

§ 1981 and Plaintiff's wrongful discharge claim and **DENIED** with respect to Plaintiff's claim for breach of contract.

**IT IS SO ORDERED.**

*J. Michelle Childs*

———————————————
J. Michelle Childs
United States District Judge

September 30, 2011
Greenville, South Carolina