IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Larry Tompkins, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.8:09-cv-02369-JMC |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Eckerd d/b/a Rite Aid, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is now before the court upon Defendant Eckerd d/b/a Rite Aid's ("Rite Aid") Motion for Reconsideration [Doc. 79] of the court's Order [Doc. 76] granting Rite Aid's Motion for Summary Judgment [Doc. 63] with respect to Plaintiff's claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 and Plaintiff's wrongful discharge claim, and denying Rite Aid's Motion for Summary Judgment with regard to Plaintiff's claim for breach of contract. For the reasons stated below, Rite Aid's Motion for Reconsideration is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

The evidence presented, viewed in the light most favorable to Plaintiff, establishes the following. Plaintiff, an African-American, is a pharmacist licensed in the state of South Carolina. Plaintiff worked as a pharmacist for Eckerd Corporation ("Eckerd") from sometime in 1984 until June of 2007. During his employment with Eckerd, Plaintiff worked at several Eckerd stores, both as a pharmacist and pharmacy manager. In October 2003, Plaintiff was transferred to Eckerd store 11649 in Greenwood, South Carolina. Plaintiff became the Pharmacist-in-Charge ("PIC") at store

11649. While employed at store 11649, Plaintiff misfilled several prescriptions. Some of these misfills resulted in Eckerd paying settlements to resolve potential liability.

In June 2007, Rite Aid Corporation[1] acquired Eckerd Corporation. After the acquisition, Plaintiff became an employee of Rite Aid and remained the PIC for store 11649. Plaintiff received training on the proper use of Rite Aid's system for filling prescriptions. In addition, Plaintiff received a copy of Rite Aid's employee handbook,"<u>An Associate Atlas</u>" (the "Atlas"), acknowledging his at-will employment status.

In November 2008, Plaintiff's supervisor, Ik Jumani, demoted Plaintiff from his position as PIC to a Staff Pharmacist as a result of Plaintiff's alleged poor performance noted in the lack of cleanliness of the pharmacy, low key performance indicator scores, and declining sales. April Scott, a white female, replaced Plaintiff as the PIC for store 11649 and became Plaintiff's immediate supervisor. Subsequently, Plaintiff was transferred to store 11648 in Greenwood, South Carolina because of his alleged resistance to Scott's management.

On November 17, 2008, Rite Aid conducted a mandatory inventory of the controlled substances at store 11649. Rite Aid's employees, including April Scott, Ik Jumani, Amanda Holmes, and Jed Bryant were present for the inventory. Rite Aid alleges that the inventory resulted in the discovery of discrepancies in the controlled drug log and medications on the shelf, including a significant shortage of Oxycontin pills. These discrepancies occurred during Plaintiff's tenure as the PIC. Although Plaintiff initially took responsibility for the pill shortage, Plaintiff later asserted that a log sheet had been electronically altered and that he was not responsible for the alleged shortage.

---

[1] Since Plaintiff has only sued Rite Aid and not Eckerd Corporation, his former employer, the court focuses its legal analysis on Plaintiff's complaints against Rite Aid during his employment there.

2

Although Ik Jumani, as Pharmacy District Manager, recommended Plaintiff's termination because of the pill shortage, his request was declined.  Subsequently, Plaintiff was suspended with pay for three days and given a written final warning of termination.  Ik Jumani later transferred to another district.

After repeated coaching and counseling, on April 24, 2009, Rite Aid terminated Plaintiff because of his misfilled prescriptions and his overall poor job performance.

Plaintiff filed this lawsuit alleging causes of action against Rite Aid for race discrimination and retaliation under Title VII and 42 U.S.C. § 1981, breach of contract, and wrongful discharge in violation of public policy.  Rite Aid filed a Motion for Summary Judgment seeking summary judgment in its favor on all of Plaintiff's claims.  The court granted Rite Aid's Motion for Summary Judgment with respect to Plaintiff's claims under Title VII and 42 U.S.C. § 1981 and Plaintiff's wrongful discharge claim, and denied Rite Aid's Motion for Summary Judgment with regard to Plaintiff's claim for breach of contract.  Now before the court is Rite Aid's Motion for Reconsideration of the court's Order to the extent that the court denied summary judgment as to Plaintiff's breach of contract claim.

## LEGAL STANDARD

The court may alter or amend a judgment for three reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Amer. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

**DISCUSSION**

In its previous Order, the court found that an issue of fact existed as to whether the <u>Rite Aid Continuous Quality Improvement Program for Accurate Prescription Processing</u> (the "QIP"), which set forth Rite Aid's guidelines for quality control in the prescription filling process, constituted a contract sufficient to alter an employee's at-will employment status. Rite Aid argues that Plaintiff's breach of contract claim fails because, even assuming the QIP constituted a contract sufficient to alter Plaintiff's at-will employment status, no breach of contract occurred because Plaintiff has failed to demonstrate that his termination was solely for QIP issues.

In support of its argument, Rite Aid cites *Greene v. Quest Diagnostics Clinical Labs.*, *Inc.*, 455 F. Supp. 2d 483 (D.S.C. 2006). The plaintiff in *Greene* alleged that her termination was in violation of a progressive disciplinary policy that governed phlebotomy errors. *Id.* at 492. Assuming for the purposes of the motion that the progressive disciplinary policy constituted a binding promise, the court in *Greene* found that the plaintiff still could not overcome summary judgment because she failed to show that her termination was in breach of the progressive disciplinary policy. *Id.* at 492–93. Specifically, the court in *Greene* noted that defendant had many reasons other than phlebotomy errors for terminating the plaintiff's employment and that the progressive disciplinary policy was not the exclusive method by which an employee could be terminated. *Id.*

The facts in *Greene* are notably distinguishable from those of the case before this court. In *Greene*, it appears that the final infraction that led to the termination of the plaintiff's employment was unrelated to a phlebotomy error, which is what the progressive disciplinary policy in that case covered. *See Greene*, 455 F. Supp. 2d at 487 (noting that the plaintiff's employment was suspended the day after the plaintiff made a potentially offensive remark in front of a patient and further noting

4

that the plaintiff's employment was terminated two days after her employment was suspended). However, in the case before this court, the sequence of events leading up to Plaintiff's termination as set forth in Rite Aid's Memorandum of Law in Support of Its Motion for Summary Judgment [Doc. 63-1 at 10–12] demonstrates that Plaintiff's misfills were the final infractions that led to the termination of Plaintiff's employment. Rite Aid does not dispute that it did not follow the procedures set forth in the QIP in addressing Plaintiff's misfills. *See* [Doc. 63-1] (noting that Plaintiff had not been counseled for his previous five misfills). Accordingly, the reasoning set forth in *Greene* upon which Rite Aid relies in its Motion for Reconsideration is inapplicable in this case.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Rite Aid's Motion for Reconsideration [Doc. 79] is **DENIED**.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 30, 2012
Greenville, South Carolina